Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 1 of 14

MORGAN B. WARD DORAN
Email: *warddoranm@sec.gov*

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Andrew G. Petillon, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

EARTHLY MINERAL SOLUTIONS, INC., NATURAL MINERALS PROCESSING COMPANY, ROY D. HIGGS, FRANK L. SCHWARTZ, and RICK LAWTON,

Defendants.

**Case No. 2:07-CV-01057-JCM-(LRL)**

# **[PROPOSED] AMENDED COMPLAINT**

Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 2 of 14

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa. The defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in or in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of business constituting violations of the federal securities laws occurred within this district.

**SUMMARY**

3. This case involves a Ponzi scheme perpetrated by Earthly Mineral Solutions, Inc. ("EMS"), Natural Minerals Processing Company ("NMPC"), and their three principal officers, Roy D. Higgs, Frank L. Schwartz, and Rick Lawton (collectively, "the defendants"). Between 2003 and 2006, EMS sold investors securities in the form of investment contracts relating to interests in mining claims located on federally owned land near Las Vegas, Nevada. By January 2006, EMS had raised approximately $20 million from over 100 investors nationwide, many of whom had been saving for retirement and liquidated their Individual Retirement Accounts ("IRAs") to invest in EMS' offering.

4. EMS enticed investors with misrepresentations about the exceptional returns that they could receive by investing in its mining claims. Specifically, EMS offered investors a guaranteed annual return of 7% to 9% on their investment, paid monthly over a period of five years, if investors purchased interests in the mining claims and granted NMPC a right of first refusal to mine the claims. Higgs, Schwartz, and Lawton, as officers of both EMS and NMPC, told investors that the returns on their investment would be paid out of the operating revenue

from EMS' purported fertilizer business, which they claimed would use minerals mined by NMPC from the claims to produce a highly profitable, environmentally friendly fertilizer for retail sale.

5. Defendants, however, were operating a Ponzi scheme. Contrary to the defendants' assertions, neither EMS nor NMPC ever extracted minerals or produced fertilizer from the mining claims owned or sold to investors by EMS. Indeed, EMS and NMPC never operated a mining and fertilizer business, and EMS received money from only one source: the sale of interests in the mining claims to investors. As in all Ponzi schemes, the monthly returns that EMS initially transferred to investors (before the scheme collapsed in late 2006) came solely from funds invested by new investors.

6. By engaging in the conduct described in this Complaint:

a. Defendants EMS, Higgs, Schwartz, and Lawton violated the registration provisions of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c);

b. All defendants violated the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a);

c. All defendants violated the antifraud provisions of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and

d. Defendants Higgs, Schwartz, and Lawton violated the broker-dealer registration provisions of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

7. The Commission seeks a permanent injunction, disgorgement with prejudgment interest, and civil penalties against all defendants.

## DEFENDANTS

8. **Earthly Mineral Solutions, Inc.** is a Nevada corporation formed in 2003 with its principal place of business in Henderson, Nevada. EMS' officers are Higgs (treasurer), Schwartz (president), and Lawton (secretary).

9. **Natural Minerals Processing Company** is a Nevada corporation formed in 2004 with its principal place of business in Las Vegas, Nevada. NMPC's officers are Higgs (president), Schwartz (treasurer), and Lawton (secretary).

10. **Roy D. Higgs**, age 65, resides in Henderson, Nevada. Higgs is a founder and the treasurer of EMS and the president of NMPC. Higgs sold at least $920,000 of EMS' mining claims to investors.

11. **Frank L. Schwartz**, age 43, resides in Henderson, Nevada. Schwartz is president of EMS and the treasurer of NMPC. Schwartz sold at least $10,000 of EMS' mining claims to at least one investor.

12. **Rick Lawton**, age 60, resides in Reno, Nevada. Lawton is secretary and in house counsel for both EMS and NMPC. Lawton is licensed to practice law in Nevada and has no disciplinary history with the Nevada State Bar.

## THE FRAUDULENT SCHEME

### A. The Defendants Offer of the Mining Claim Interests

13. In late 2003, EMS began offering interests in its mining claims to investors nationwide. EMS initially charged investors approximately $2,000 per acre and eventually raised the price to $30,000 per acre. Between 2003 and 2006, EMS sold approximately $20 million in mining claims.

14. In its offering materials, EMS represented to investors that the capital generated from the sale of its mining claims would be used for "business expansion and to extend the company's mineral processing operation." EMS claimed that NMPC would mine the claims and that EMS would use the minerals extracted from the land to produce a chemical-free fertilizer, referred to as a "soil-amendment," that it would offer for retail sale. EMS projected a yearly output of 62,400 tons of fertilizer and revenue of $80 per ton after costs, or an operating profit of approximately $5 million per year. EMS did not disclose that the offering costs, including commissions and the costs of giving seminars to potential investors, would be paid from the offering proceeds.

15. An integral part of EMS' offering was its promise to pay investors a guaranteed annual return on their investment of 7% to 9%, paid monthly for five years, if the investors granted NMPC a right of first refusal to mine the investors' claims. Higgs, Schwartz, and Lawton, as officers of both EMS and NMPC, told investors that these returns would be paid from the profits of NMPC's mining operation and EMS' fertilizer business. Investors could earn the higher 9% return by allowing NMPC to pay the funds directly out of EMS' operating revenue from the purported fertilizer business. Alternatively, investors would earn 7% if they required EMS to place the funds for the income payments with a title company. Both rates of return were to be paid by monthly payments deposited directly into investors' bank accounts. Most, if not all, of EMS' investors granted NMPC the right of first refusal to mine their claims in exchange for these returns.

16. The right of first refusal agreement was the lever that EMS used to convince investors that the mining claims were valuable and, therefore, a legitimate investment. Investors could only receive a return on their investment if they agreed to the right of first refusal.

**B. The Defendants Solicit Investors**

17. EMS solicited investors through a nationwide print and television advertising campaign, as well as through prior contacts, referrals, and word of mouth. EMS also had a national network of sales agents who actively sought out new investors. EMS did not disclose to investors that its sales agents received commissions of between 7% and 15%.

18. EMS and its sales staff solicited investments from individuals who were saving for retirement. EMS provided potential investors who sought to liquidate their personal IRAs forms to establish new IRAs with EMS and offered to pay the transfer or rollover fees charged by the prior custodian.

19. EMS gave potential investors offering and promotional materials, including its business plan and a videotaped infomercial. These promotional materials described the company's business plan to mine the land for fertilizer. Higgs, Schwartz, Lawton, and others appeared on EMS' promotional infomercial and touted the earnings that investors could reap by investing in the mining claims. EMS also maintained three websites, now inactive, and sent

Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 6 of 14

investors monthly newsletters that touted their purported fertilizer products. In addition, EMS advertised its mining claims in newspapers nationwide and through local television advertisements, often targeting senior investors who were unhappy with the returns of their IRA and 401(k) accounts.

20. EMS' advertisements and sales representatives invited investors to attend sales seminars held weekly at EMS' Las Vegas facility and to tour the land on which the mining claims sat. EMS paid potential investors' airfare to, and hotel and transportation expenses in, Las Vegas. At the seminars, EMS solicited investments by promoting the annual income that EMS would pay investors for granting NMPC the right of first refusal to mine the claims. Higgs, Schwartz, and Lawton, as officers of both EMS and NMPC, participated in these seminars, at which EMS misrepresented to potential investors that NMPC had already started mining the claims and that the monthly returns that EMS would pay to investors would come from the profits of its fertilizer business.

21. EMS' promotional materials and sales seminars described Higgs as a successful business executive with a favorable track record. Similarly, EMS' promotional materials and sales seminars presented Lawton as an experienced attorney with more than twenty-five years of experience and an extensive background representing miners, as well as mining and mineral processing companies.

22. During EMS' sales seminars, the defendants took potential investors on a tour of the area where the mining claims were located. As part of this tour, the defendants showed investors an operational mining business called Four-Star Aggregate ("Four-Star"). The defendants told investors that EMS had purchased or was otherwise affiliated with Four-Star.

## C. <u>The Defendants Make Material Misrepresentations to Investors</u>

### 1. The Defendants Misrepresent Their Credentials

23. The defendants made material misrepresentations to potential investors regarding Higgs' and Lawton's professional background, falsely stating that they were successful in their respective professions. Contrary to these misrepresentations, Higgs and Lawton had each filed for bankruptcy at least twice prior to 2004. Moreover, on February 15, 1991, the

Arizona Corporations Commission (“ACC”) issued a Cease and Desist Order to defendant Higgs for violating the registration and antifraud provisions of the Arizona securities laws. The ACC Order required Higgs to pay restitution of $105,000 and a penalty of $15,000. All of the defendants knew that this information was material and nonetheless failed to disclose it to investors.

**2. The Defendants Misrepresent Their Business Relationships**

24. Contrary to the defendants statements to investors, EMS never had any affiliation with Four-Star. The defendants misrepresented EMS’ purported relationship with Four-Star to portray EMS as a substantial and operational business that was actively mining claims to produce fertilizer. In fact, as all defendants knew, EMS and NMPC were not operable businesses and EMS’ sole source of income was the sale of mining claims.

**3. The Defendants Misrepresent Their Use of Investor Capital**

25. EMS raised approximately $20 million from investors from the sale of its mining claims between 2003 and 2006. Contrary to their representations that investors’ funds would be used to expand EMS’ fertilizer business, the proposed defendants never used any of the funds for that purpose. Indeed, neither EMS nor NMPC had mined or produced or sold any fertilizer from the mining claims. Moreover, neither EMS nor NMPC earned income from any source other than the sale of the mining claims. All of the defendants knew that EMS and NMPC were not operable businesses and that EMS’ sole source of income was the sale of mining claims.

**4. The Defendants Use Investor Capital to Pay Returns to Other Investors**

26. Instead of using the offering proceeds to expand its purported mining and fertilizer businesses, EMS used the funds to pay returns to existing investors. All of the defendants knew that EMS paid investor returns with offering proceeds rather than revenue from the purported mining and fertilizer businesses.

27. EMS also used the offering proceeds to pay its employees. EMS paid Higgs, Schwartz, and Lawton each a monthly salary of $20,000 and provided them a monthly $3,000 housing stipend, a company car, and a credit card. In addition, EMS used the offering proceeds

Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 8 of 14

to pay sales representatives undisclosed commissions that ranged between 7% and 15% of the sale price of the interests in the mining claims. EMS did not disclose to investors in its offering materials that it paid officers' salaries and employees' commissions using offering proceeds. All of the defendants knew that EMS used offering proceeds, and not operating revenue from the purported mining and fertilizer business, to pay its officers and employees.

**D. <u>The Ponzi Scheme Collapses</u>**

28. In February 2006, the Nevada state securities authorities issued a cease-and-desist order against EMS, Higgs, Schwartz, and Lawton, and the FBI, Bureau of Land Management ("BLM"), and Nevada Secretary of State executed a search warrant at EMS. EMS stopped selling interests in mining claims in March 2006.

29. In August and September 2006, EMS stopped paying investor returns.

30. On September 28, 2006, the defendants sent investors a letter by United States mail that falsely claimed that the delay in payments of its monthly returns was due to "problems with the automatic accounting with [the] bank," and assuring investors that "[n]ext month should get everyone on a steady schedule." All of the defendants were aware of this letter and that its contents were false, but only Lawton signed the letter.

31. In October 2006, the defendants notified investors in a letter sent by United States mail that NMPC could no longer make its monthly payments.

32. On October 18, 2006, the defendants sent investors a letter by United States mail that falsely stated that EMS had entered into a "contract [that] will pay $15,000,000 to EMS, plus a product purchase commitment for an additional $10,000,000." The letter stated that the purported contract was with "the owner of a prominent company in China," for the manufacture and sale of the defendants' fertilizer product. The letter further stated that EMS would catch up on the missed payments to investors in the following months. All of the defendants were aware of this letter and that its contents were false, but only Higgs signed the letter.

33. In November 2006, the Oklahoma state securities authorities issued a cease-and-desist order against EMS, NMPC, Higgs, Schwartz, and Lawton.

34. On December 12, 2006, the defendants sent investors a letter by United States mail that falsely stated that "EMS has entered into a contract to receive in excess of twenty million dollars, this will take place within the next ninety days." All of the defendants were aware of this letter and that its contents were false, but only Lawton signed the letter.

35. Despite having stopped paying returns to investors in September 2006, EMS continued to periodically send letters to investors claiming that additional financing will be forthcoming and stating that it will soon be in a position to resume making payments.

36. On July 14, 2008, the defendants sent investors a letter by United States mail requesting a check for $375 "to complete the renewal" of their mining claims. The money that defendants requested from investors in this letter was not equal to the cost of renewing the individual investors' claims. Instead, the defendants calculated the total cost to renew all of the mining claims and divided that amount by the number of investors that they thought might respond favorably to their letter. This material information was not disclosed to investors.

**E. <u>Defendants Higgs and Schwartz Have Criminal Judgments Entered Against Them</u>**

37. On April 20, 2009, Judge Stephen N. Limbaugh, Jr. of the United States District Court for the Eastern District of Missouri entered a Judgment against Schwartz for Misprision of a Felony (18 U.S.C. § 4) related to the conduct alleged in this Amended Complaint. The Judgment ordered Schwartz imprisoned for three years and imposed a one year term of supervision upon his release. Rather than determine a restitution amount, Judge Limbaugh noted in the Judgment that "[t]he defendant anticipates that [the Commission's civil action] will include a comprehensive restitution order as it relates to relevant conduct in the instant offense."

38. On September 14, 2009, Judge Limbaugh entered a Judgment against Higgs for Conspiracy to Commit Fraud (18 U.S.C. § 371) related to the conduct alleged in this Amended Complaint. The Judgment ordered Higgs imprisoned for five years and imposed a three year term of supervision upon his release. As was true of the Schwartz Judgment, the Judgment against Higgs did not impose restitution.

Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 10 of 14

**FIRST CLAIM**

**Unregistered Offer And Sale Of Securities**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**(Against Defendants EMS, Higgs, Schwartz, and Lawton)**

39. The Commission realleges and incorporates by reference paragraphs 1 through 27 above.

40. Defendants EMS, Higgs, Schwartz, and Lawton, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

41. No registration statement has been filed with the Commission or has been in effect with respect to any of the offerings or sales alleged herein.

42. By engaging in the conduct described above, defendants EMS, Higgs, Schwartz, and Lawton violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c).

**SECOND CLAIM**

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a) of the Securities Act**

**(Against All Defendants)**

43. The Commission realleges and incorporates by reference paragraphs 1 through 27 above.

44. The defendants, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

a. with scienter, employed devices, schemes, or artifices to defraud;

b. obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the

Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 11 of 14

statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

45. By engaging in the conduct described above, the defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

**THIRD CLAIM**

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

**(Against All Defendants)**

46. The Commission realleges and incorporates by reference paragraphs 1 through 27 above.

47. The defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

a. employed devices, schemes, or artifices to defraud;

b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

48. By engaging in the conduct described above, the defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 12 of 14

**FOURTH CLAIM**

**Violations of the Broker-Dealer Registration Provisions**

**Violations of Section 15(a) of the Exchange Act**

**(Against Defendants Higgs, Schwartz, and Lawton)**

49. The Commission realleges and incorporates by reference paragraphs 1 through 27 above.

50. Defendants Higgs, Schwartz, and Lawton by engaging in the conduct described above, directly or indirectly, made use of the mails or means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of securities, without being registered as a broker or dealer in accordance with Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), 15 U.S.C. § 78o(a).

51. By engaging in the conduct described above, defendants Higgs, Schwartz, and Lawton violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that the defendants committed the alleged violations.

**II.**

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining defendants EMS, Higgs, Schwartz, Lawton, and those persons in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise, from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c).

**III.**

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining all defendants, and those persons in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise, from violating Section 17(a) of the

Securities Act, 15 U.S.C. § 77q(a).

**IV.**

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining all defendants, and those persons in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**V.**

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining defendants Higgs, Schwartz, and Lawton, and those persons in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise, from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

**VI.**

Order all of the defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

**VII.**

Order all of the defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**VIII.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Case 2:07-cv-01057-JCM-LRL Document 71-1 Filed 04/23/10 Page 14 of 14

**IX.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: April 23, 2010

Respectfully submitted,

*/s/ Morgan B. Ward Doran*

Morgan B. Ward Doran
Attorney for Plaintiff
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
E-Mail: *warddoranm@sec.gov*
Telephone: (323) 965-3998
Facsimile: (323) 965-3908