UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>v.<br><br>EARTHLY MINERAL SOLUTIONS, INC., et al.,<br><br>            Defendants. | 2:07-CV-1057 JCM (LRL) |

**ORDER**

Presently before the court are plaintiff Securities Exchange Commission's (hereinafter "SEC") notice of motion for summary judgment against defendant Roy D. Higgs (doc. #112), memorandum of points and authorities (doc. #112-1), statement of undisputed facts (doc. #112-2), and declaration of Morgan B. Ward Doran (doc. #113) (hereinafter collectively "motion for summary judgment"). Defendant Roy D. Higgs failed to file an opposition.

Plaintiff SEC's amended complaint (doc. #73) stems from an alleged "Ponzi scheme," where defendants Roy D. Higgs, Frank L. Schwartz, and Rick Lawton (hereinafter collectively "individual defendants"), as officers of Earthly Mineral Solutions Inc. and Natural Minerals Processing Company (hereinafter "corporate defendants"), defrauded investors into investing approximately $20 million in the companies. In the amended complaint (doc. #73), SEC asserts four separate claims for relief against the defendants for: (1) the unregistered offer and sale of securities in violations of sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act"); (2) fraud in the offer or sale

**James C. Mahan**
**U.S. District Judge**

of securities in violation of section 17(a) of the Securities Act; (3) fraud in connection with the purchase or sale of securities in violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and rule 10b-5 thereunder; and (4) violations of the broker-dealer registration provisions in violations of section 15(a) of the Exchange Act.

On July 15, 2010, this court entered default against corporate defendants for failure to obtain counsel pursuant to Federal Rules of Civil Procedure 16(f), 37(b)(2)(A), and 55(a). (Doc. #76). Subsequently, individual defendant Frank L. Schwartz consented (doc. #85) to the entry of judgment against him, and the court entered judgment accordingly (doc. #91). Upon SEC's motion for summary judgment against the individual defendants (doc. #78), the court entered summary judgment on plaintiff's second and third claims against individual defendants. (Doc. #97).

On September 24, 2010, the court granted the plaintiff's prayer for a permanent injunction prohibiting future violations and for disgorgement in the amount of $20 million, together with prejudgment interest, against corporate defendants. (Doc. #98). The court denied, without prejudice, the request for civil penalties, due to the court being provided with only an approximate number of investors to calculate an award of civil penalties. *Id.* Subsequently, on January 1, 2011, defendant Rick Lawton consented to entry of judgment (doc. #108), and the court entered judgment (doc. #117) against him accordingly.

**Motion for Summary Judgment Against Roy D. Higgs**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c).

In the present motion for summary judgment (doc. #112-113), SEC asserts that summary judgment is appropriate because (1) the court has already found Higgs violated section 17(a) of the Securities Act and section 10(b) of the Exchange Act (counts two and three), (2) these findings

1  establish that the interests in mining claims at issue in this action were "securities" under the federal
2  securities laws, and (3) Higgs has admitted the remaining elements of the two unresolved counts in
3  this action: in count one, violations of sections 5(a) and (c) of the Securities Act, and in count four,
4  violation of section 15(a) of the Exchange Act.

5  **A.    Sections 5(a) and (c) of the Securities Act**

6  Sections 5(a) and (c) prohibit the unregistered offer or sale of securities in interstate
7  commerce, unless exemption from registration applies. *SEC v. Platforms Wireless Intern. Corp.,* 617
8  F.3d 1072, 1085 (9th Cir. 2010); 15 U.S.C. §§ 77e(a) and (c). Once the SEC provides the court with
9  evidence that the defendant has violated such provisions, the defendant has the burden of proof to
10 demonstrate that an exemption applies. *SEC v. Murphy,* 626 F.2d 633, 641 (9th Cir. 1980) (citing
11 *SEC v. Ralston Purina Co.,* 346 U.S. 119, 126 (1953)).

12 SEC asserts that the necessary elements have been satisfied, requiring summary judgment
13 on this issue. First, it correctly asserts that the court's partial summary judgment order (doc. #97) and
14 the joint pretrial order (doc. #102, at pgs 3-5) established that the mining claim interests at issue were
15 securities and that Higgs participated in the offer and sale of these securities. Second, Higgs admitted
16 in the pretrial order that he "did not file a registration statement with the [c]ommission, and none has
17 been in effect, with respect to any of the offerings or sales of interests in mining claims alleged by
18 the [c]ommission." (Doc. #102, at pg. 5).

19 Finally, with respect to the remaining element of sections 5(a) and (c), Higgs admitted in the
20 pretrial order that "[t]he transactions at issue in this action (i.e., the offer, purchase, or sale of
21 interests in mining claims) made use of means or instruments of transportation or
22 communication in interstate commerce or of the mails." *Id.* at pg. 5. As SEC has proven violations
23 of sections 5(a) and (c), the burden then shifts to defendant Higgs to prove that an exemption applies.
24 *Murphy,* 626 F.2d 633, 641.

25 A defendant can prove an exemption applies by showing either (1) the intrastate exemption
26 applies under section 3(a)(11) of the Securities Act, 15 U.S.C. § 77c(a)(11), (2) the private placement
27 exemption applies under section 4(2) of the Securities Act, 15 U.S.C. § 77d(2), or (3) that an
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  exemption under Regulation D, 17 C.F.R. § 230.504-6[1], applies.

2  Here, Higgs is unable to prove any of these exemptions apply, because he has admitted facts that support a contrary conclusion. First, Higgs admitted that he sold mining claims to investors nationwide (doc. #102), which defeats the intrastate exemption. 15 U.S.C. § 77c(a)(11). Second, as SEC asserts, he admitted in his deposition (doc. #113-1) and the pretrial order (doc. #102) that he "conducted general solicitations through newspaper advertisements, raised over $18 million, and offered and sold the securities to more than 100 investors," which negate the possibility of asserting an exemption under private placement or Regulation D. 15 U.S.C. § 77d(2); 17 C.F.R. § 230.504-6.

As SEC has established violations of sections 5(a) and (c), and defendant Higgs has essentially admitted that he cannot demonstrate that an exemption is applicable, the court is inclined to grant summary judgment on this issue.

**B.     Section 15(a) of the Exchange Act**

Pursuant to section 15(a) of the Exchange Act, a broker-dealer is prohibited from using interstate commerce to effect, or attempt to induce, transactions in securities unless he is registered with the commission in accordance with section 15(b). 15 U.S.C. § 77o(a); *SEC v. United Monetary Servs., Inc.,* 1990 WL 91812, at *8 (S.D. Fla. May 18, 1990). The Exchange Act defines "broker" as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Further, activities that indicate a person may be a "broker" are: (1) solicitation of investors to purchase securities, (2) involvement in negotiations between the issuer and the investor, and (3) receipt of transaction-related compensation. *See e.g., SEC v. Hansen,* 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984).

Here, Higgs has admitted in the pretrial order and his deposition that he solicited investors, actively promoted the mining claims, induced investors to purchase the securities, sold interests directly to investors, and used the means of interstate commerce *without* being registered as a broker-

---

[1] Under Regulation D, sections 230.504-06 provide exemptions for limited offerings and sales of securities not exceeding $1,000,000, not exceeding $5,000,000, and without regard to the dollar amount of the offerings (applying an exemption if there were no more than 35 purchasers).

James C. Mahan
U.S. District Judge

- 4 -

1  dealer. (Doc. #102 and #113-1).

2  Pursuant to rule 3a4-1 of the Exchange Act, persons associated with the issuer can be protected by a safe harbor from being deemed brokers, provided they meet certain criteria. Rule 3a4-1(4)(ii)(c)[2]. However, as SEC asserts, Higgs does not qualify for this safe harbor, "because, among other things, he [admittedly] participated in [the] selling and offering of securities more than once every twelve months." *Id.* (Doc. #113-1).

Since SEC has shown that no genuine issues of material fact exist with regards to this claim, summary judgment is warranted.

**Relief Sought By SEC**

The SEC asks this court to grant summary judgment against Higgs and to (1) permanently enjoin him from further violations of the federal securities laws, (2) direct him to disgorge his ill-gotten gains, with prejudgment interest, and (3) assess civil penalties against him.

  **A.**  **Permanent Injunction**

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(1), provide that upon proper showing that a reasonable likelihood of future violations exists, a permanent injunction shall be granted in an enforcement action brought by the SEC. *Murphy,* 626 F.2d at 655. The court will look at the totality of the circumstances, i.e. past violations, degree of scienter involved, the isolated or recurrent nature of the violations, or the recognition of the wrongful behavior. *Id; United States v. Odessa union Warehouse Co-op,* 833 F.2d 172, 176 (9th Cir. 1987); *SEC v. Koracorp Industries, Inc.,* 575 F.2d 692, 698 (9th Cir. 1978).

Here, a reasonable likelihood of future violations exists because Higgs has been previously enjoined from similar conduct, been convicted criminally for his conduct related to this case, which, as SEC asserts, "requires the highest degree of scienter," and his violations were "multiple, continued and egregious." Thus, SEC's request for preliminary injunction is granted.

---

[2] Rule 3a4-1(4)(ii)(c) provides that the safe harbor applies if "[t]he associated person does not participate in selling and offering of securities for any issuer more than once every 12 months...."

**James C. Mahan**
**U.S. District Judge**

- 5 -

### B.     Disgorgement of Ill-Gotten Gains

The SEC may seek, and courts may order, disgorgement of ill-gotten gains. *See SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998); *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995) ("In the exercise of its equity powers, a district court may order the disgorgement of profits acquired through securities fraud."). Courts have "broad equity powers to order the disgorgement of 'ill-gotten gains' obtained through the violation of the securities laws." *First Pacific*, 142 F.3d at 1191; *see also SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006). Further, disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *First Pacific*, 142 F.3d at 1191 (citing *Hateley v. SEC*, 8 F.3d 653, 655 (9th Cir. 1993)).

In determining the disgorgement amount, the SEC need only show "a reasonable approximation of profits causally connected to the violation." *First Pacific,* 142 F.3d at 1192 n.6 (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996)). After a "reasonable approximation" figure is established, the burden of proof shifts to the defendant, who must demonstrate that the disgorgement figure is not reasonable. *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004); *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1232 (D.C. Cir. 1989).

The SEC seeks an order requiring Higgs to disgorge ill-gotten gains in the amount of $18 to $20 million, together with prejudgment interest. As evidenced by defendant Higgs' deposition and the records of mining claim investors, Earthly Mineral Solutions, Inc. (hereinafter "EMS") raised approximately $18.7 million from investors. (Doc. #113-1, Exhibit 26 thereto). Further, Higgs admitted in the pretrial order (doc. #102), that EMS sold approximately $20 million in mining claims. Thus, Higgs has failed to meet his burden of demonstrating that the disgorgement figure is unreasonable.

As the court stated in its order granting default judgment against EMS and Natural Minerals Processing Company (doc. #98), disgorgement of ill-gotten gains in the amount of $20 million, together with prejudgment interest, is appropriate here.

**C.     Civil Penalties**

Sections 20(d)(1) of the Securities Act, 15 U.S.C. § 77t(d)(1), and 21(d)(3)(A) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(A), provide that the SEC may seek, and the court may impose, civil monetary penalties for securities violations. Civil penalties are "determined by the court in light of the facts and circumstances." *See* Section 20(d)(2) of the Securities Act, 15 U.S.C. § 77t(d)(2)(A), and Section 21(d)(3)(B) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(B).

The court will look at several factors when determining whether to impose civil penalties, including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *SEC v. Opulentica,* LLC, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007) (citing *SEC v. Coates,* 137 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2001).

Here, civil penalties are warranted because Higgs' conduct was egregious, he demonstrated a high degree of scienter, caused substantial losses to other persons, and committed the fraudulent acts on a recurrent basis. (Docs. #102 and #113-1). The SEC asks this court to impose a third tier civil penalty. According to 17 C.F.R. § 201.1003 & Table III (2007), the maximum third tier penalty with regards to the issue at hand is $130,000.00 per violation for a natural person. SEC asserts that Higgs "perpetrated a longstanding securities fraud that resulted in substantial, proven losses, to over 100 victims." To support this assertion, it relies on Higgs' deposition testimony. However, as the court held in its previous order (doc. # 98), since the court has not been provided with an exact number of investors who were victims of the violations, the court is unable to calculate an appropriate award of civil penalties at this time.

Accordingly,

IT IS HEREBY ORDERED ADJUDGED AND DECREED that plaintiff Securities Exchange Commission's motion for summary judgment against defendant Roy D. Higgs (doc. #112),

**James C. Mahan
U.S. District Judge**

- 7 -

1  be and the same hereby is, GRANTED in part.

2  IT IS THEREFORE ORDERED that SEC's prayer for a permanent injunction
3  prohibiting future violations of the above referenced sections be, and the same hereby is,
4  GRANTED.

5  IT IS FURTHER ORDERED that the SEC's prayer for disgorgement in the amount of
6  $20 million, together with prejudgment interest be, and the same hereby is, GRANTED against
7  defendant Roy D. Higgs.

8  IT IS FURTHER ORDERED that due to the inability of the court to calculate an award of
9  civil penalties, the SEC's prayer for civil penalties be, and the same hereby is DENIED
10  without prejudice.

11  DATED March 23, 2011.

14  *[signature: James C. Mahan]*
   UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**